01
02
03
04
05
06
07
08
09
10
11
12
13
14

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MAUDO FOFANA,                        )    Case No.  C06-869-JLR-JPD
                                     )              CR04-511-JLR
              Petitioner,            )
                                     )
      v.                             )
                                     )    REPORT AND RECOMMENDATION
UNITED STATES OF AMERICA,            )
                                     )
              Respondent.            )
_____ )

15            I.    INTRODUCTION AND SUMMARY CONCLUSION

16        Petitioner Maudo Fofana is currently serving a two-year term of supervised release in

17  the custody of the United States Bureau of Immigration and Customs Enforcement ("ICE")

18  pursuant to 18 U.S.C. § 3624(e), based on statements he made in an application for asylum.

19  This is the third case filed in this Court in which petitioner collaterally challenges his continued

20  detention.  *See also Fofana v. Melendez*, 05-1775-RSM, Dkt. No. 33 (dismissing § 2241

21  petition with prejudice); *Fofana v. Clark*, C06-924-JLR, Dkt. No. 26 (same).  Petitioner

22  previously filed a motion in the present case under 28 U.S.C. § 2255 seeking to vacate, set

23  aside, or correct his 2006 federal court sentence.  Dkt. No. 1.   Because petitioner's direct

24  appeal of his criminal case, along with at least one 28 U.S.C. § 2241 appeal, were still

25  pending before the United States Court of Appeals for the Ninth Circuit, and because

26  petitioner's case did not otherwise present "extraordinary circumstances" justifying relief, the

REPORT AND RECOMMENDATION
PAGE – 1

01   Honorable James L. Robart dismissed petitioner's § 2255 motion without prejudice.  Dkt. No.

02   10.  Subsequently, and for similar reasons, Judge Robart denied petitioner's motion for a

03   certificate of appealability ("COA") pursuant to 28 U.S.C. § 2253(c).  Dkt. No. 16.  Petitioner

04   has appealed the former decision to the Ninth Circuit.  *Fofana v. United States*, Case No.

05   06-36058 (9th Cir. filed Nov. 9, 2006).

06          The present matter comes before the Court upon petitioner's motion to reopen his

07   § 2255 case based upon changed circumstances, arguing that the Ninth Circuit's recent ruling

08   on his direct appeal invokes the catch-all provision of Federal Rule of Civil Procedure

09   60(b)(6).  Dkt. No. 19; *see United States v. Fofana*, Case No. 06-30196 (9th Cir. Dec. 12,

10   2006) (unpublished disposition) (affirming district court's decision denying defendant's

11   motion to withdraw his guilty plea).  In the spirit of cooperation, petitioner has promised to

12   withdraw his appeal of Judge Robart's § 2255 decision should this Court recommend that his

13   motion to reopen be granted.  After careful consideration of the motion, supporting materials,

14   governing law, and the balance of the record, the Court recommends that petitioner's motion

15   be DENIED.

16                        II.   FACTS AND PROCEDURAL BACKGROUND

17          Petitioner is a native and citizen of Gambia.  On February 16, 2002, he entered the

18   United States at New York, New York, using a Gambian passport under the name

19   Muhammad Fofana.  *See Fofana v. Clark*, C06-924-JLR-JPD, Dkt. No. 18 at R114, R169,

20   L215-17.  The passport listed petitioner as a native and citizen of Gambia with a date of birth

21   of August 10, 1970.  *Id.*   He was admitted to the United States as a B-2 non-immigrant

22   visitor for pleasure.  *Id.*  On February 13, 2003, petitioner filed an application for asylum

23   under the name Maudo Fofana.  *Id.* at L173-83, L311.  Although petitioner was admitted as a

24   B-2 visitor with a Gambian passport, he claimed that he was a citizen of Sierra Leone, and

25   was born on January 7, 1972.  *Id.*

26

REPORT AND RECOMMENDATION
PAGE – 2

01        On November 18, 2004, petitioner was arrested and taken into custody by the FBI,

02   and charged with the crime of Fraud Related to Immigration Documents under 18 U.S.C. §

03   1546(a), for knowingly and falsely making an asylum application.  *Fofana v. Clark*,

04   C06-924-JLR-JPD, Dkt. No. 18 at L241-50.   He was released from custody on November 29,

05   2004, and on December 3, 2004, petitioner was transferred to the custody of ICE pursuant to

06   an arrest warrant.  *Id.* at R111-14.  ICE determined that petitioner should remain detained,

07   finding that he is likely to abscond and is a flight risk.  *Id.* at R112-13.   Petitioner

08   immediately requested a bond redetermination hearing before an Immigration Judge ("IJ"),

09   and on December 13, 2004, an IJ issued an order denying petitioner bond on the basis that he

10   was a flight risk.  *Id.* at L16.  This determination was affirmed by the Board of Immigration

11   Appeals ("BIA") on March 8, 2005.  *Id.* at R281-82.

12        On July 11, 2005, petitioner, proceeding through counsel, appeared at a master

13   hearing before an IJ, at which time petitioner admitted that he had entered the United States

14   on February 16, 2002, as a B-2 visitor using a Gambian passport under the name of

15   Muhammad Fofana, and that he had subsequently submitted an application for asylum under

16   the name Mauda Fofana, asserting that he was a citizen of Sierra Leone.  *Id.* at R287; Dkt.

17   No. 16, Ex. A at 4.  On August 3, 2005, the IJ issued a detailed written opinion pretermitting

18   petitioner's application for asylum, finding that petitioner knowingly submitted a frivolous

19   asylum application using counterfeit Sierra Leone identity documents.  *Id.* Dkt. No. 18 at

20   R291-304.   The opinion ordered that petitioner be removed from the United States to

21   Gambia for failing to possess a valid immigration visa.  *Id.*

22        Shortly thereafter, petitioner met with his criminal counsel to discuss the upcoming

23   trial on immigration fraud.   Based on the IJ's detailed opinion and the evidence possessed by

24   the government, petitioner's counsel explained that she could not help him win an acquittal,

25   and advised that he plead guilty.  Before petitioner entered a guilty plea, counsel advised him

26   of the consequences of such a plea and reviewed the entire plea agreement that both had

REPORT AND RECOMMENDATION
PAGE – 3

01    signed.  On November 9, 2005, appearing before the Honorable Monica J. Benton, petitioner

02    pled guilty to the crime of Fraud Related to Immigration Documents in violation of 18 U.S.C.

03    § 1546(a).  *Id.* Dkt. No. 16, Ex. A.   In the plea agreement, petitioner admitted to knowingly

04    and falsely making an asylum application.  *Id.* at 4.  The agreement also stated that the

05    government agreed "to recommend to the sentencing court that the appropriate period of

06    confinement should be a credit for time served in immigration custody," with no additional

07    jail time.  *See United States v. Fofana*, CR04-511-JLR, Dkt. No.148.   During the plea

08    colloquy, Judge Benton reviewed the factual basis for the plea, confirmed that petitioner

09    could read and write English and had read and understood the agreement, advised him of the

10    maximum penalties (including the maximum term of supervised release), explained that he

11    could be removed, and reminded petitioner of the constitutional rights he was relinquishing.

12    *Id.* Dkt. No. 171 at 4-11, 13.

13        On January 2, 2006, petitioner, proceeding through new counsel, filed a motion to

14    withdraw his guilty plea, arguing that petitioner's misunderstanding of the term "supervised

15    release" in the plea agreement, and the failure of his previous counsel and Judge Benton to

16    correct this misunderstanding, warranted withdrawal of the plea.  *Id.* Dkt. No. 166.  Five days

17    later, Judge Robart conducted an evidentiary hearing on the matter, at which time petitioner

18    testified regarding the circumstances surrounding his plea.  *Id.* Dkt. No. 176, 203.  At

19    hearing's end, Judge Robart denied petitioner's motion, finding that petitioner had failed to

20    establish a "fair and just reason" to withdraw his guilty plea under Fed. R. Crim. P.

21    11(d)(2)(B).  *See id.* Dkt. No. 203, at 82 (Robart, J.) ("Mr. Fofana made an assumption about

22    further developments in his immigration proceeding and then took an action in his criminal

23    proceeding, which was unrelated to what was going to happen in immigration.").  On March

24    27, 2006, Judge Robart entered judgment against petitioner, sentencing him to twelve days

25    confinement, with credit for twelve days served, followed by a two-year term of supervised

26    release.  *See id.* Dkt. Nos. 186, 190.

REPORT AND RECOMMENDATION
PAGE – 4

01   During the pendency of petitioner's Rule 11(d) motion, the BIA dismissed

02   petitioner's appeal of the IJ's removal order.  *Fofana v. Clark*, C06-924-JLR-JPD, Dkt.

03   No.13, Ex. 4.  Petitioner's appeal of the BIA's ruling is currently pending before the Ninth

04   Circuit, which has granted petitioner's motion for stay of removal pending its decision.  *Id.*

05   Ex. 5.

### III.  DISCUSSION

A.   Fed. R. Civ. P. 60(b)(6)

08   Under Federal Rule of Civil Procedure 60(b)(6), "[o]n motion and upon such terms as

09   are just, the court may relieve a party . . . from a final judgment, order, or proceeding . . .

10   [for] any other reason justifying relief from the operation of the judgment."  Fed. R. Civ. P.

11   60(b)(6).   The motion must be made "within a reasonable time," and the movant must show

12   "extraordinary circumstances" justifying the reopening of a final judgment.  *Gonzalez v.*

13   *Crosby*, 545 U.S. 524, 535 (2005).[1]   Rule 60(b)(6) is a catchall provision, and should be

14   applied only when the reason for granting relief is not covered by any of the other reasons set

15   forth in Rule 60.  *Community Dental Servs. v. Tani*, 282 F.3d 1164, 1168 n.8 (9th Cir. 2002).

16   This is such a case.  A district court considering a Rule 60(b)(6) motion may take into

17   account factors such as "the diligence of the movant, the probable merit of the movant's

18   underlying claims, the opposing party's reliance interests in the finality of the judgment, and

19   other equitable considerations."  *Gonzalez*, 545 U.S. at 540.

20   However, the Court may not conduct the aforementioned analysis if petitioner's §

21   2255 motion is a "second or successive" motion governed by § 2244(b)(1)-(2).  *See* 28 U.S.C.

22   § 2255, ¶ 8.  The difference between a true Rule 60(b) motion and an unauthorized "second

---

[1]   Although *Gonzalez* expressly limited its holding to petitions brought under 28 U.S.C.
§ 2254, subsequent appellate decisions have extended *Gonzalez*'s reasoning to § 2255 motions.
*See, e.g.*, *United States v. Nelson*, 465 F.3d 1145, 1149 (10th Cir. 2006); *United States v. Scott*,
414 F.3d 815, 816 (7th Cir. 2005); *see also Moore v. Reno*, 185 F.3d 1054, 1055 (9th Cir. 1999)
(section 2244(b) requirements must be met for successive § 2255 motions).  This Court does the
same, finding no reason that would make *Gonzalez* inapplicable to the facts of this case.

REPORT AND RECOMMENDATION
PAGE – 5

01  or successive" habeas corpus petition was explained in *Gonzalez v. Crosby*, 545 U.S. 524

02  (2005).  There, the Supreme Court held that a Rule 60(b) motion that "seeks to add a new

03  ground for relief," or "attacks the federal court's previous resolution of a claim on the

04  merits," constitutes a second or successive habeas petition.  *Id.* at 532.

05       Here, petitioner's Rule 60(b)(6) motion advances no new arguments and reasserts no

06  old ones.   It simply attacks the court's previous decision dismissing the § 2255 motion

07  without prejudice for prudential reasons in light of, *inter alia*, petitioner's direct appeal,

08  which was then pending before the Ninth Circuit.  Because the instant motion confines itself

09  not only to the first federal habeas proceeding, but also to the non-merits aspect of that

10  proceeding, it is not a "second or successive" petition under 28 U.S.C. § 2244(b), as defined

11  by *Gonzalez.  See Gonzalez*, 545 U.S. at 534.  In other words, because petitioner's motion

12  challenges only a procedural ruling of the district court which *precluded* a merits

13  determination of his § 2255 motion, the Court treats the instant motion as a true Rule 60(b)(6)

14  motion.

15       B.   Petitioner's Motion

16            1.   *Diligence of the Movant*

17       A Rule 60(b)(6) motion is required to be brought "within a reasonable time."  Fed. R.

18  Civ. P. 60(b)(6).  "What constitutes a reasonable time depends on the facts of each case," and

19  should take into consideration the reasons for the delay and whether the government was

20  prejudiced by the delay.  *In re Pacific Far East Lines, Inc.*, 889 F.2d 242, 249 (9th Cir.

21  1989).  Here, petitioner filed his motion to reopen twenty-eight days after the Ninth Circuit

22  issued a memorandum opinion affirming Judge Robart's decision denying petitioner's motion

23  to withdraw his guilty plea.  *See* Dkt. No. 19, Ex. A.   The government was in no way

24  prejudiced by this brief delay.  Accordingly, petitioner's motion is timely under Rule

25  60(b)(6).

26            2.   *Extraordinary Circumstances*

REPORT AND RECOMMENDATION
PAGE – 6

01       If timely brought, relief under Rule 60(b)(6) requires a showing of "extraordinary

02  circumstances." *Gonzalez*, 545 U.S. at 535.   Rule 60(b)(6) relief is to be used "sparingly

03  [and] as an equitable remedy to prevent manifest injustice." *United States v. Alpine Land &*

04  *Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993); *see also Latshaw v. Trainer Wortham &*

05  *Co., Inc.*, 452 F.3d 1097, 1103 (9th Cir. 2006) ("Judgments are not often set aside under

06  Rule 60(b)(6).").  Importantly, the Supreme Court has cautioned that "[s]uch circumstances

07  will rarely occur in the habeas context." *Gonzalez*, 545 U.S. at 535.   To obtain Rule 60(b)(6)

08  relief, the movant "'must demonstrate both injury and circumstances beyond his control that

09  prevented him from proceeding with the prosecution or defense of the action in a proper

10  fashion.'"  *United States v. Washington*, 394 F.3d 1152, 1157 (9th Cir. 2005) (quoting *Tani*,

11  282 F.3d at 1168).

12       Petitioner has failed to allege, much less establish, the requisite "extraordinary

13  circumstances" justifying relief from judgment under Rule 60(b)(6).  First, petitioner presents

14  no injury and circumstances beyond his control that prevented him from prosecuting his

15  original habeas claim in the proper fashion. *Washington*, 394 F.3d at 1157.  Second, the

16  motion itself alleges no manifest injustice or other circumstance that would warrant the rare

17  equitable relief provided by Rule 60(b)(6).

18                 3.   *Probable Merit of the Movant's Underlying Claims*

19       Finally, and perhaps most importantly, the probable lack of merit of the movant's

20  underlying § 2255 motion counsels against Rule 60(b)(6) relief.  Four claims were presented

21  by that motion: (1) ineffective assistance of counsel; (2) a due process violation based upon

22  actual innocence; (3) a flawed indictment; and (4) trial court error in failing to grant

23  petitioner's motion to withdraw his guilty plea.  Dkt. No. 1.

24       Petitioner procedurally defaulted on his second and third claims by abandoning them

25  during an evidentiary hearing before the district court and on direct appeal. *See United States*

26  *v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993) (noting that a § 2255 movant commits a

REPORT AND RECOMMENDATION
PAGE – 7

01  procedural default if he "could have raised a claim of error on direct appeal but nonetheless

02  failed to do so").  In federal habeas cases, a petitioner "who fails to raise a claim on direct

03  appeal is barred from raising the claim on collateral review," unless the petitioner can

04  demonstrate both "cause" for not raising the claim at trial, and "prejudice" from not having

05  done so.  *Sanchez-Llamas v. Oregon*, ___ U.S. ___, 126 S. Ct. 2669, 2682 (2006); *see also*

06  *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614,

07  621 (1998).  Here, petitioner has failed to establish cause for his failure to raise his due

08  process and flawed indictment arguments.[2]  Petitioner had ample opportunity to raise these

09  claims during a lengthy evidentiary hearing before the district court and on direct appeal.  His

10  choice not to do so bars collateral review of those claims.

11       Petitioner's failure to present his ineffective assistance of counsel claim, however,

12  does not bar collateral review.  The Supreme Court in *Massaro* held that such claims may be

13  raised for the first time in a proceeding under 28 U.S.C. § 2255.  Nevertheless, petitioner's

14  ineffective assistance claim lacks merit.

15       Claims of ineffectiveness of counsel are reviewed according to the standard announced

16  in *Strickland v. Washington*, 466 U.S. 668, 687-90 (1984).  *Rupe v. Wood*, 93 F.3d 1434,

17  1445 (9th Cir. 1996).  In order to prevail on such a claim, the petitioner must establish that his

18  counsel's performance at trial was deficient, and that the deficient performance prejudiced his

19  defense.  *Strickland*, 466 U.S. at 687.

20       To satisfy the first prong of the *Strickland* test, the petitioner must establish that

21  appellate counsel's performance was deficient, *i.e.*, that it fell below an "objective standard of

22  reasonableness" under "prevailing professional norms."  *Id.* at 687-88.  To do so, the petitioner

---

24       [2]  Nor has petitioner established, under *Schlup v. Delo*, 513 U.S. 298 (1995), that his
claim of actual innocence "is sufficient to bring him within the 'narrow class of cases . . .

25  implicating a fundamental miscarriage of justice.'"  *Carriger v. Stewart*, 132 F.3d 463, 477 (9th
Cir. 1997) (en banc) (quoting *Schlup*, 513 U.S. at 315).  In other words, in light of all the

26  evidence, it is *not* "more likely than not that no reasonable juror would have found petitioner
guilty beyond a reasonable doubt."  *Schlup*, 513 U.S. at 327.

REPORT AND RECOMMENDATION
PAGE – 8

01 | must rebut the "strong presumption that counsel's conduct falls within the wide range of

02 | reasonable professional assistance." *Strickland*, 466 U.S. at 689.   The test is not whether

03 | another lawyer, with the benefit of hindsight, would have acted differently, but whether

04 | "counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed the

05 | defendant by the Sixth Amendment." *Id.* at 687, 689; *see also Dows v. Wood*, 211 F.3d 480,

06 | 487 (9th Cir. 2000) ("Under *Strickland*, counsel's representation must be only objectively

07 | reasonable, not flawless or to the highest degree of skill.").

08 |   To meet the second *Strickland* requirement of prejudice, the petitioner must show that

09 | counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.  It is not

10 | enough that counsel's errors had "some conceivable effect on the outcome." *Id.* at 693.

11 | Rather, the petitioner must establish a "reasonable probability that, but for counsel's

12 | unprofessional errors, the result of the proceeding would have been different." *Id.* at 691.  "A

13 | reasonable probability is a probability sufficient to undermine confidence in the outcome" of

14 | the case. *Id.* at 694.  Failure to satisfy either prong of the *Strickland* test obviates the need to

15 | consider the other. *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002).

16 |   Here, petitioner has failed to demonstrate that his counsel's performance at trial was

17 | deficient.  Petitioner's trial counsel was able to negotiate a sentencing recommendation of

18 | credit for time served, which was eventually imposed by the district court. *See* Dkt. No. 190.

19 | Regarding the issue of supervised release, counsel reasonably concluded that, "in light of the

20 | findings entered by the immigration judge at [petitioner's] asylum hearing," petitioner would be

21 | removed to Gambia after serving his term of imprisonment, and thus would be unaffected by

22 | imposition of supervised release. Dkt. No. 1, Ex. J at 6 (Declaration of Trial Counsel).  While

23 | perhaps not flawless in hindsight, counsel's representation in this regard was objectively

24 | reasonable and thus not deficient under *Strickland*.  Because counsel's performance was not

25 | deficient, it could not have prejudiced petitioner's defense. *Strickland*, 466 U.S. at 687.

26 |

REPORT AND RECOMMENDATION
PAGE – 9

01          Finally, petitioner's fourth claim—regarding petitioner's motion to withdraw his

02   guilty plea—was not only denied on its merits by the Ninth Circuit on direct appeal, *see*

03   *United States v. Fofana*, Case No. 06-30196 (9th Cir. Dec. 12, 2006) (unpublished

04   disposition), but it appears to have now been abandoned by the petitioner.  *See* Dkt. No. 21 at

05   32.   Assuming *arguendo* that petitioner has not done so, and that this Court could entertain

06   the issue, the Court would adopt the rationale of the Ninth Circuit on direct appeal.  *See Reed*

07   *v. Farley*, 512 U.S. 339, 358 (1994) ("[C]laims will ordinarily not be entertained under §

08   2255 that have already been rejected on direct review."); *Polizzi v. United States*, 550 F.2d

09   1133, 1135 (9th Cir. 1976) (district court may refuse to entertain a § 2255 motion based on

10   claims of error which were previously rejected on the merits in a direct appeal, absent a

11   showing of "manifest injustice []or a change in law").   As a matter of law, Fed. R. Civ. P. 11

12   does not require a sentencing court to inform a criminal defendant of the "collateral

13   consequences" of his guilty plea, which includes immigration consequences such as the term

14   of supervised release petitioner is now serving.  *United States v. Amador-Leal*, 276 F.3d 511,

15   517 (9th Cir. 2002) ("[I]mmigration consequences continue to be a collateral consequence of

16   a plea and the resulting conviction.  This means that district courts are not constitutionally

17   required to warn defendants about potential removal in order to assure voluntariness of a

18   plea.").   Accordingly, Petitioner's Rule 11 and due process rights were not violated.

19                                   IV.  CONCLUSION

20          Petitioner has failed to meet the requirements of Rule 60(b)(6).  Although petitioner's

21   motion was made within a reasonable time, it fails to establish the requisite "extraordinary

22   circumstances" justifying relief from judgment.  Accordingly, the Court recommends that

23   petitioner's motion to reopen pursuant to Rule 60(b) be DENIED.  A proposed order

24   accompanies this Report and Recommendation.

25          DATED this  25th day of June, 2007.

26                                                    _____
                                                      JAMES P. DONOHUE
                                                      United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE – 10